UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY RICHARD | No. 2:21-cr-00150-JAW |

**PROSECUTION VERSION**

If this case were to proceed to trial, the government would prove that beginning in at least 2013 and continuing through about March 2017, in the District of Maine and elsewhere, the Defendant, Jeffrey Richard, willfully attempted to evade payment of a large part of the employment withholding taxes due and owing by Black Bear Industrial, Inc. The government would prove the following facts through witness testimony and documentary evidence.

At all relevant times, Richard was the founder, president and sole shareholder of Black Bear Industrial, Inc., a metal fabrication and construction company in Rumford, Maine. The company was incorporated in 2006. Between 2007 and 2016, Black Bear failed to file any quarterly employment tax returns or pay employment taxes. In 2015, the IRS contacted Black Bear about its delinquent tax return for 2012 and ultimately assessed Black Bear $55,900 in employment taxes based on a correspondence audit that relied on Forms W-2 filed with the IRS. In 2016, Black Bear filed employment tax returns for all quarters of 2013–2016. Richard signed all of the returns as Black Bear's president. The forms reported a total employment tax liability of $1,612,036, but Black Bear only paid a total of $326,380.

At trial the government would provide evidence of the following facts, among others, to demonstrate Richard's willful attempts to evade payment of Black Bear's

employment taxes:

### Knowledge of And Failure to Address Employment Tax Liability

In January 2014, Richard engaged a business consultant, M.S., for assistance in running Black Bear and helping it grow. In March 2014, M.S. presented Richard with a written "Operational Assessment" for Black Bear. The assessment included a "Top Ten To Do" list for Black Bear to move forward. One of the items stated, "Tax deposits to be made with every payroll, in compliance with IRS Publication 15:" Another stated, "Multiple quarters worth of withholding and unemployment taxes remain unpaid. Filing is separate from payment!"

Throughout the time he worked with Black Bear, M.S. discussed the company's unpaid employment tax liability with Richard. M.S. tried to get Richard to hire a payroll management firm, but Richard never did so. M.S. loaned Richard substantial amounts of money, none of which was used to reduce Black Bear's tax liability.

In January 2015, Richard signed a document stating in part:

> I have been advised by [M.S.] ... of the Company's outstanding and unpaid tax and trust fund (i.e. amount withheld from employees' paychecks) obligations to the State of Maine and the Internal Revenue Service ... I further confirm and acknowledge that [M.S.] ... has strongly and repeatedly advised the Company to remit such outstanding trust fund amounts prior to making other payments, in keeping with state and federal law.

### Use of Business Funds for Other Purposes

Richard regularly used funds from Black Bear's business bank account to withdraw cash, pay personal expenses, make payments on a business property, make loan payments to creditors and make personal purchases, all while making no payments toward Black Bear's tax liability.

Formation and Operation of Northern Mountain Construction

In April 2015, Richard formed another company, Northern Mountain Construction (NMC). The company was allegedly owned by Richard's girlfriend, but she later acknowledged that she owned it in name only. M.S. informed Richard that the IRS would have an issue with them forming NMC, but they went ahead with it because they needed financing to keep operating Black Bear. When Richard purchased a building in Rumford that Black Bear did business out of, he had the owner release all of his interest in the property to NMC rather than to Richard or Black Bear.

In December 2016, during a face-to-face conversation with an IRS Revenue Officer, Richard falsely claimed that he had nothing to do with NMC. This was despite the fact that Richard told the Revenue Officer that NMC was refinancing the Rumford building to pay some of the back taxes. Later, in January 2017, Richard again falsely told the Revenue Officer that he had nothing to do with NMC. In fact, Richard was always involved with NMC, despite his girlfriend being nominally the sole member of the company. Additionally, in June 2016, Richard and his girlfriend had entered into a "Membership Interest Purchase Agreement," under which Richard "purchased" his girlfriend's 100% interest in NMC for $10,000. No money ever changed hands, and Richard's girlfriend had no idea why Richard had her enter into the agreement.

Although there were additional reasons why Richard created NMC, at least one of them was to disguise business transactions and assets from the IRS.

Formation and Operation of Midwest Industrial Corporation

In January 2017, Richard formed Midwest Industrial Corporation (MWI). The company was incorporated in Oklahoma. The business address for MWI was the personal address of an associate of Richard's in Oklahoma. When the associate asked

Richard about receiving mail for MWI at the associate's address, Richard falsely claimed it was a mistake and would get it changed.

Richard's girlfriend was purportedly the President of MWI, but as with NMC, she claimed no actual involvement in the company. His girlfriend opened a bank account for the company at Bangor Savings Bank. Richard told a lender, R.G., that they needed to start MWI to continue operating while trying to negotiate a payment plan with the IRS. When R.G. agreed to loan MWI $70,000, the promissory note listed Richard and his girlfriend as the owners.

MWI did business and had over $174,000 of business income in 2017, but none of the money was used to pay the IRS. Richard never informed the IRS about MWI. MWI never filed any corporate tax returns or employment tax returns. Richard told his girlfriend that he would pay taxes for MWI. As with NMC, although there were multiple reasons why Richard formed MWI, one of them was to disguise business transactions and assets from the IRS.

Dated: July 13, 2023                    Respectfully submitted,

                                        DARCIE N. MCELWEE
                                        UNITED STATES ATTORNEY


                                         /s/ Craig M. Wolff
                                        Craig M. Wolff
                                        Assistant United States Attorney
                                        U.S. Attorney's Office
                                        100 Middle Street, Sixth Floor
                                        Portland, ME 04101
                                        (207) 780-3257
                                        craig.wolff@usdoj.gov

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2023, I electronically filed this **Prosecution Version** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**Richard S. Berne, Esq.**
berne@bernelawme.com

**Peter E. Rodway, Esq.**
peter@rodwaylaw.com

DARCIE N. MCELWEE
UNITED STATES ATTORNEY


 /s/ Craig M. Wolff
Craig M. Wolff
Assistant United States Attorney